**Stephen CZARECKI, as Executor of the Estate of Vivian N. Czarecki, Plaintiff,**

v.

**Scott F. SCHERER, Individually, and as a Police Officer of the Village of Herkimer, NY; Robert M. Risi, Individually, and as a Police Officer of the Village of Herkimer, NY; Carl L. Lane, Individually, and as Chief of Police of the Village of Herkimer, NY; John Doe, a fictitious name intended to represent the names of several Oneida County Sheriffs whose identities are as yet unknown, Individually, and in their official capacity as Sheriffs of the County of Oneida; and Village of Herkimer, Defendants.**

No. 97–CV–1523.

United States District Court, N.D. New York.

Aug. 31, 1999.

Lockwood & Golden, Utica, NY, Stephen L. Lockwood, of counsel, for plaintiff.

Office of Michael M. Emminger, Albany, NY, David Winans, of counsel, for the Village of Herkimer defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

Presently before the court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on August 12, 1999 in Utica, New York. Decision was reserved.

### I. FACTS

On October 21, 1996 at approximately 1:30 a.m., Vivian Czarecki ("Czarecki"), a 72 year old New Jersey resident, was observed speeding and running through a red light on Route 5 in Herkimer, New York. Defendants Scott Scherer ("Scherer") and Robert Risi ("Risi"), patrolmen of the defendant Village of Herkimer, pursued Czarecki with their lights and sirens on. Risi overtook Czarecki and moved his vehicle in front of hers. Scherer moved up next to Czarecki in the passing lane, thereby boxing her in. While Risi and Scherer attempted to slow Czarecki's vehicle down, Czarecki struck Risi's police car, running him off the road. Scherer then proceeded to move in front of Czarecki. Czarecki struck Scherer's car several times, forcing him off the road. Czarecki lost control and struck a telephone pole, severing the car into two pieces. She was ejected from the car and was pronounced dead at the scene.

Stephen Czarecki ("plaintiff") commenced this action, as executor of Vivian Czarecki's estate, asserting causes of action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, as well as the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. Plaintiff also asserted state law claims for assault and battery, intentional infliction of emotional distress, and negligence. Plaintiff seeks compensatory

**94**

and punitive damages in the amount of One Million Dollars each.

Plaintiff's attorney subsequently stipulated to the dismissal of all claims except the state law claim for negligence. (Docket No. 14 at ¶¶ 4, 5.) Specifically, plaintiff conceded that he cannot establish his federal claims in light of the Supreme Court's holding in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998),[1] which was decided after plaintiff commenced this action.

## II. *DISCUSSION*

### A. *Jurisdiction*

■ Both sides requested the court to retain jurisdiction over plaintiff's negligence claim. District courts have discretion to dismiss a claim supported by supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). A federal court may retain jurisdiction after weighing and balancing factors such as "judicial economy, convenience, and fairness to litigants." *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir.1998) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994)).

■ In the instant case, the state law issue involved is not novel or complex. The parties have already had one pretrial conference and have engaged in motion practice and several months of discovery. Judicial economy and the desires of both sides would be served by retaining jurisdiction over plaintiff's negligence claim.

It should also be noted that, even though plaintiff originally asserted that his negligence claim is only supported by supplemental jurisdiction, there is also diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a)(1). Czarecki was a citizen of New Jersey. Plaintiff, as her executor, is also deemed a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(2). The citizenship of each defendant is New York

and the amount in controversy exceeds $75,000. Accordingly, for both reasons discussed, jurisdiction will be retained over plaintiff's negligence claim.

### B. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–249, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there

---

1. *See infra* p. 95.

is "little or no evidence … in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### 1. *Review of Plaintiff's Negligence Claim*

The defendants argue that plaintiff's negligence claim is governed by the standard set forth in *Sacramento,* which held that "high speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under Section 1983." 523 U.S. at 854, 118 S.Ct. 1708. However, the plain language in *Sacramento* is clear that this standard applies to due process claims. Thus, New York State law governs this common law negligence claim.

"Drivers of emergency vehicles have a primary obligation to respond quickly to preserve life and property and to enforce the criminal laws." *Saarinen v. Kerr,* 84 N.Y.2d 494, 497, 644 N.E.2d 988, 989, 620 N.Y.S.2d 297, 298 (1994). In recognition of these needs, the Vehicle and Traffic Law qualifiedly exempts them from certain traffic laws when they are "involved in an emergency operation." N.Y. Veh. & Traf. Law § 1104(a) (McKinney 1996). The New York State Court of Appeals has determined that "Vehicle and Traffic Law § 1104(e) precludes imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness." *Saarinen,* 84 N.Y.2d at 497, 644 N.E.2d at 989, 620 N.Y.S.2d at 298.

This standard demands more than a showing of a lack of 'due care under the circumstances'—the showing typically associated with ordinary negligence claims. It requires evidence that 'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great

as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome.

*Id.* at 501, 644 N.E.2d at 991, 620 N.Y.S.2d at 300 (citations omitted).

The defendants claim that the standard set forth in *Saarinen* is no different from that in *Sacramento.* However, the defendants are mistaken on this point. *Sacramento* requires actions which shock the conscience, or "conduct intended to injure in some way unjustifiable by any government interest." 523 U.S. at 849, 118 S.Ct. 1708. "Whether the point of conscience shocking is reached when injuries are produced with culpability falling within the middle range," such as recklessness, must be determined on a case by case basis. *Id.* The standard set forth in *Saarinen,* on the other hand, imposes liability for unreasonable conduct committed in disregard of a known or obvious risk of harm. 84 N.Y.2d at 501, 644 N.E.2d at 991, 620 N.Y.S.2d at 300. There is no requirement that such reckless conduct rise to the conscious shocking level.

■ Issues of fact exit in this case which preclude summary judgment. The patrolmen pursued Czarecki for approximately eight minutes. The accident reconstruction report estimates that when Czarecki struck Scherer's vehicle, she was driving approximately 74 miles per hour and Scherer was driving approximately 65 miles per hour on slightly wet roads. (Defs.' Notice of Mot.Ex. C.) Furthermore, the Herkimer Police Department's Vehicular Pursuit Policy prohibits high speed pursuit "for violations which do not create immediate danger, such as going through a red light…." *Id.* "A violation of this policy … would be an important, although not dispositive, factor in determining whether [the defendants] had acted recklessly." *Saarinen,* 84 N.Y.2d at 503 n. 3, 644 N.E.2d at 992, 620 N.Y.S.2d at 301.[2]

---

**2.** The court in *Saarinen* found defendant's conduct of "fish-tailing, squealing of brakes

and disregard of traffic signs and signals" more serious than a series of minor traffic

Thus, the circumstances surrounding the pursuit, and whether the defendants acted recklessly are questions which should be decided by a jury.

## III. *CONCLUSION*

While the evidence demonstrates that the tragedy which occurred on October 21, 1996 was instigated by Czarecki's attempts to flee the police, issues of fact exist concerning whether Risi and Scherer pursued her in reckless disregard for the safety of others, particularly Czarecki herself.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. Plaintiff's negligence claim against defendant Carl L. Lane, all of his federal claims, and his state law claims for assault and battery and intentional infliction of emotional distress are DISMISSED; and

3. This action shall continue only with respect to plaintiff's negligence claims against defendants Scherer, Risi, and Village of Herkimer.[3]

IT IS SO ORDERED.

---

violations, thereby justifying the officer to use whatever means necessary, short of recklessness, to stop the defendant. 84 N.Y.2d at 503, 644 N.E.2d at 992, 620 N.Y.S.2d at 301. In the instant case, plaintiff was observed driving 50 miles per hour in a 30 miles per hour zone and running through one red light. The erratic driving which was observed in the *Saarinen* case was not present here.

The present case is further distinguishable from *Saarinen* in that, in *Saarinen*, the incident occurred in an "extremely short time frame." *Id.* at 504, 644 N.E.2d at 993, 620 N.Y.S.2d at 302.

3. There was no action commenced against any John Doe defendants.